UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIMON V. GARCIA, ROY VAN KEMPEN, CHRISTOPHER YANEZ, and EMMA YANEZ, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>GORDON TRUCKING, INC., a California corporation; STEVE GORDON, an individual, BOB GOLDBERG, an individual; and DOES 1 through 20 inclusive,<br><br>    Defendants. | CASE NO. 1:10-CV-0324 AWI SKO<br><br>ORDER APPROVING CLASS SETTLEMENT AND ENTRY OF FINAL JUDGMENT |

    Plaintiffs move for a final approval of class action settlement and attorneys' fees. Pursuant to this Court's June 8, 2012 Order Granting Preliminary Approval of Class Action Settlement, this Court conducted a final approval and fairness hearing on October 29, 2012 in Courtroom 2 (AWI). Plaintiffs appeared by S. Brett Sutton and Jared Hague, Sutton Hatmaker Law Corporation, and James Patterson, Patterson Law Group, APC. Defendants appeared by Defendants appeared by Adam Smedstad, Scopelitis Garvin Light Hanson & Freary, P.C. No one appeared to object to the proposed settlement, and no objections were received before or

1

after the August 31, 2012[1] deadline.

To determine whether this class settlement fundamentally is fair, adequate and reasonable, this Court considered the proposed Joint Stipulation of Settlement[2] between the parties, the relative strengths of Plaintiffs' claims, the risks and expense involved in continuing litigation, the proposed expense for settlement administration, and attorneys' fees, among other things. This Court further considered the unopposed motion and supporting declarations. For the reasons stated on the record and set forth below, this Court will approve the settlement, as ordered below.

## BACKGROUND

Representative Plaintiffs, Simon V. Garcia, Roy Van Kempen,[3] Christopher Yanez, and Emma Yanez, are former employees of Defendant Gordon Trucking, Inc. ("GTI") whose job duties consisted of driving commercial trucks to transport freight for GTI's customers. GTI compensated drivers on a mileage-based piece-rate compensation system whereby they were paid on a cents-per-mile basis, plus accessorial pay. Plaintiffs challenged GTI's compensation system, alleging that it did not compensate drivers with at least the California minimum wage for all hours worked during both driving and non-driving activities. Plaintiffs further claimed that GTI did not provide drivers with required meal periods and rest periods, that GTI did not pay all compensation due and owing to to drivers as of the time of their separation of employment, that GTI did not maintain proper employment records, and that the paystubs provided to drivers did not comport with the requirements of California law. Plaintiffs alleged eight causes of action: (1) minimum wage as under 29 U.S.C. §206; (2) minimum wage under Cal. Labor Code §1194; (3)

---

[1] The Court set the deadline for Class Members to file comments and/or objections not later than sixty days from the date the Class Notice was mailed. *See* Court's Docket, Doc. No. 156 at ¶ 13. Plaintiffs' counsel indicates the Settlement Administrator mailed 1,868 Class Notices on July 2, 2012. *See id.* Doc. No. 158 at 9.

[2] Decl. of S. Brett Sutton, Ex. 1.

[3] Plaintiff Roy Van Kempen was a current employee of GTI at the time of the Consolidated Complaint.

meal periods under Cal. Labor Code §226.7; (4) rest periods under Cal. Labor Code §226.7; (5) itemized wage statements under Cal. Labor Code §226; (6) timely wages at termination under Cal. Labor Code §201; (7) unfair business practice under Cal. Bus. & Prof. Code §17200; and (8) recovery under the Private Attorney General Act, Cal. Labor Code §2699. Doc. 72, Complaint.

In a June 8, 2012 order, this Court granted class certification for the purposes of settlement only. The Settlement Class was certified as follows: "All current and former employee drivers of GTI who resided in California at any time within the Class Period, as defined below, whose job duties include, among other things, driving commercial motor vehicles and who are/were paid, in part, on a cents-per-mile basis, and whose names appear on the list attached as Exhibit 1 to the Settlement."

The Court's June 8, 2012 order approved a notice to be issued to the class members and included a time period in which class members had to submit a timely and valid claim form in order to receive a settlement share. The class notice further included a time period in which class members had to comment on or object to the settlement, or elect not to participate. The class administrator mailed the class notice to 1,868 individuals. A total of 17 class members submitted opt-out forms. Of the opt-out forms received, 15 were considered valid and timely. The opt-outs constitute less than 1% of the class. As of the filing of the instant motion, the settlement administrator received 886 Claim Forms. Of the 886 claim forms received, four were untimely. Of the 882 class members who submitted timely claim forms, 91 submitted claim forms with incomplete information and were sent a letter and asked to supply the missing information. Of those 91, 80 resolved the deficiencies and 11 remain deficient. Therefore, the settlement administrator received 871 claim forms that are considered valid and timely.

## PROCEDURAL HISTORY

Plaintiff Simon Garcia filed this action in this Court on February 23, 2010. GTI filed an answer to the complaint on April 19, 2010.

Plaintiff Garcia filed a Motion for Partial Summary Judgment on his PAGA claim. Plaintiffs also moved for class certification. These motions were pending at the time the parties reached a settlement.

The parties engaged in extensive formal and informal discovery efforts. They exchanged numerous sets of written discovery, thousands of pages of documentary evidence, and took and defended 16 depositions, including those of the class representatives, several of GTI's executives, and putative members of the settlement class. Class counsel also interviewed dozens of putative class members and obtained written statements from those persons.

On March 23, 2012, Plaintiffs filed a Notice of Settlement. Plaintiffs moved for preliminary approval of the class action settlement. The Court granted the motion, certified the class, and set a final approval and fairness hearing.

Plaintiffs filed the instant motion for final approval of the class action settlement. The motion is unopposed. This Court conducted a fairness hearing on October 29, 2012.

## SETTLEMENT AGREEMENT

*Terms*

Under the Settlement, GTI agreed to pay a maximum of $3.7 million. This figure is defined by the Settlement as the Gross Settlement Amount. The Net Settlement Amount consists of the Gross Settlement Amount less: (1) court-approved attorneys' fees not to exceed 33% of the Gross Settlement Amount; (2) reasonable litigation expenses; (3) incentive awards to the Plaintiffs; (4) costs of administration; and (5) PAGA penalties payable to the California Labor Workforce and Development Agency ("LWDA"). Under the terms of the Settlement, GTI agreed to pay the Class at least 60% of the Net Settlement Amount without reversion. The parties agreed that if the aggregate of the individual amounts claimed by the class members represented less than 60% of the Net Settlement Amount, the difference would be paid to a court-approved Cy Pres recipient. As of the filing of the instant motion, the class members have claimed approximately 65% of the Net Settlement Amount. Therefore, the parties have not designated a Cy Pres recipient.

Each member of the Settlement Class is eligible to receive his or her individual share of the Net Settlement Amount based on the number of pay periods worked by each member of the Settlement Class during the class period. The primary benefit of this formula is that it relies upon objective evidence of the term of employment, which class members can easily review and confirm for themselves.

GTI provided the settlement administrator with an electronic file which included the names of the class members, their last known mailing address, and the number of weeks worked by each class member falling within the scope of the class definition.  Each Settlement Class member's individual share of the Net Settlement Amount is net of any taxes and required withholdings, as defined by the Settlement.

*Labor Workforce and Development Agency Payment*

In satisfaction of the claims arising under Plaintiff Garcia's PAGA claims, the parties have agreed that GTI will allocate $10,000 to PAGA claims, with $7,500 paid to the California Labor and Workforce Development Agency and $2,500 distributed to the participating members of the Settlement Class on a pro-rata basis.

*Claims Administration*

The parties agreed that the Gross Settlement Amount includes $25,000 for the costs associated with the administration of this Settlement by Rust Consulting, Inc.  Rust's total costs of administration totaled $35,155.27, less a discount of $5,155.27.  The parties have agreed to satisfy the remaining administration costs from the Net Settlement Amount on a pro-rata basis from those Class Members who timely submitted Claim Forms.

*Attorneys' Fees and Expenses*

The parties have agreed that an award of attorneys' fees not to exceed thirty three percent (33%) of the Gross Settlement Amount, or $1,221,000 should be awarded.  The parties further agree to an award of costs and expenses not to exceed $100,000.

*Class Representative Incentive Awards*

The parties agreed that Plaintiffs shall receive an incentive award of $15,000 each, in addition to their individual shares of the Settlement, in compensation for their services as Class Representatives.

*Scope of the Release*

The scope of the release by the Class Members (other than those who elect not to participate in the Settlement), defined in the Settlement as the "Released Claims," tracks the scope of Plaintiffs' allegations.  The release for Class Representatives is broader and

encompasses all claims, whether known or unknown.

### STANDARD OF REVIEW

"The court must approve any settlement ... of the claims ... of a certified class." Fed.R.Civ.P. 23(e)(1)(A). A settlement may be approved only after a hearing and on finding that it is fair, reasonable, and adequate. Fed.R.Civ.P. 23(e)(1)(C). This approval is required to ensure that the settlement is consistent with plaintiffs' fiduciary obligations to the class. *See Ficalora v. Lockheed Cal. Co.,* 751 F.2d 995, 996 (9th Cir.1985).

The determination of whether a class settlement is fundamentally fair, adequate and reasonable requires:

> a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir.1998) (quoting *Torrisi v. Tuscon Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir.1993)). This list is non-exhaustive, and the Court may weight different factors depending on the circumstances of the case. *Id.* When parties reach a settlement prior to class certification, the Court has an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

Under Federal Rule of Civil Procedure 23(a), a district court may certify a class only if the class is so numerous that joinder of all members is impracticable, there are questions of law or fact common to the class, the claims of the representative parties are typical of the claims of the class, and the representatives will fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(a). Under Rule 23(b)(3), the district court must also find that questions of law or fact common to the class predominate over any questions affecting only individual class members, and that a class action is superior to other available methods for resolving the controversy. Fed. R. Civ. P. 23(b)(3). The party seeking class certification "bears the burden of

showing that each of the four requirements of Rule 23(a) and at least one requirement of Rule 23(b) have been met." *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1176 (9th Cir. 2007) *rev'd on other grounds by* 131 S. Ct. 2541, 180 L.Ed.2d 374 (2011).

## DISCUSSION

The Court shall consider the fairness, adequacy, and reasonableness of the proposed settlement pursuant to the aforementioned factors.

### *Requirements of Rule 23(a) and (b)*

In this case, there are approximately 1,869 individuals who fall within the class definition as set forth in the Settlement. The Court therefore finds that the numerosity requirement of Rule 23(a)(1) is met. Because the parties have resolved their disputes, they will not need to prove any individualized issues relating to liability. As a result, the fact that defines the class - their employment with GTI as drivers - satisfies the commonality requirement of Rule 23(a)(2). Plaintiffs allege they were employed by Defendants during the Class Period. The parties agree that the Plaintiffs were paid under the same pay practices as every other class member. Thus, Plaintiffs allege they suffered injuries similar to those of the rest of the class, and the typicality requirement under Rule 23(a)(3) is satisfied. As discussed in the Court's June 8, 2012 order granting preliminary approval of the class action settlement, Plaintiffs Simon V. Garcia, Roy Van Kempen, Christopher Yanez and Emma Yanez have been appointed Class Representatives. The Court finds that the four named plaintiffs acted vigorously to prosecute this action on behalf of the class members by providing information and documentation, responding to written discovery requests from Defendants, and by providing deposition testimony. The Court therefore finds that the adequacy of representation requirement of Rule 23(a)(4) has been met.

Common issues predominate over individual issues because Plaintiffs contend GTI's mileage-based piece-rate compensation system, which was uniformly applied to the class members, resulted in the injuries alleged in the complaint. Moreover, the parties have agreed for purposes of settlement only that certification of the class is appropriate under Rule 23(b)(3) because the settlement obviates the need for litigation of individual liability and damage issues. Finally, it appears that a class action is the superior method for resolution of this matter. There is

no evidence that the class members have an interest in pursuing individual litigation. As noted above, there have been no objections to the proposed settlement, and less than 1% of the class members who received notice elected to opt out. Further, although the aggregate of the payments to class members is substantial, the monetary damages each class member will receive are relatively modest. It appears there is no other pending litigation against GTI relating to the claims at issue int his case. Pursuant to Rule 23(b)(3), the Court finds that the foregoing factors weigh in favor of certification, and the Court will certify the Settlement Class for purposes of final approval of the Settlement.

*Strength of Plaintiffs' Case*

This Court has not addressed the strengths of Plaintiffs' case by way of motion, as Plaintiff Garcia's motion for summary judgment and the motion for class certification were pending when settlement was reached. The record demonstrates that the parties have engaged in extensive discovery that produced documentary evidence and testimony that supported Plaintiffs' claims that GTI uniformly applied a mileage-based pay system to the class members which resulted in, among other things, class members performing non-driving tasks for which they were not compensated, violation of California's meal and rest break requirements, and failure to maintain adequate employment records. However, certain areas of uncertainty and risk strongly favor final approval of the class action settlement.

*Risk, Expense, Complexity, and Likely Duration of Further Litigation*

Further litigation would involve certifying the class and, if approved, engaging in discovery on damages issues. Analysis of the damages of the each class member would have been time consuming and expensive, and the uncertainty of such an analysis would pose an increased risk to class members. The time and expense of continued litigation, including any appeals that could be filed on motions that were pending before this Court when settlement was reached could potentially outweigh any additional recovery obtained through successful litigation. Settlement at this stage in the proceedings saves substantial attorneys' fees, costs, and expenses for all parties.

*Risk of Maintaining Class Action Status Throughout the Trial*

Plaintiffs acknowledge the risks in continued litigation. Even if they demonstrated wage and hour violations by GTI, there was risk that the Court may not have certified some or all of Plaintiffs' claims for class treatment. Moreover, the California Supreme Court's recent ruling in *Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004 (Cal. 2012), could pose obstacles to certification of a significant part of Plaintiffs' claims.  The *Brinker* ruling that meal breaks need only be provided, and the nature of Plaintiff's work, also creates uncertainty as to whether Plaintiffs could certify and prevail on their meal and rest break claims.  There was also the risk of a ruling that would have required Plaintiffs to certify their claims under PAGA, which would have introduced another obstacle to recovery for the class members. Against all these uncertainties, an immediate and certain payout amounting to an average gross award of $1,626 per class member favors approval.

*The Amount Offered in Settlement*

Here, the Gross Settlement Amount is $3.7 million.  Plaintiffs negotiated a minimum payout to the class of 60% of the Net Settlement Amount.  However, the amounts claimed by the class members exceeded that floor, and as of the filing of the instant motion, the class members have claimed a total of over $1,416,662.88, resulting in an average pre-tax recovery to each class member of $1,626.  This represents a very favorable result in a wage and hour case involving truck drivers who are typically at the lower end of the earnings spectrum. The adequacy of the amount offered in settlement is also reinforced by the absence of any objection to the Settlement, as well as the low opt-out rate of less than 1% of the class.

*Extent of Discovery Completed*

This matter was initiated in February of 2010 and has been actively litigated from the outset. Combined, the parties participated in a total of 16 depositions.  Class Counsel also thoroughly reviewed thousands of pages of GTI records, including daily time records and payroll records of Class Members, numerous employee handbooks and policy manuals, GPS location records and various emails of GTI representatives.

Beyond formal discovery efforts, Class Counsel also undertook to conduct informal interviews of dozens of Class Members to further investigate Plaintiffs' claims.  Class Counsel

also obtained 20 signed statements by current and former class members that supported Plaintiffs' claims. Based on their extensive discovery efforts, Class Counsel were able to reach an informed decision with respect to the offer that ultimately resulted in the instant Settlement. The discovery efforts and motions practice in this case proceeded to a point in which both Plaintiffs and Defendants "ha[d] a clear view of the strengths and weaknesses of their cases." *In re Warner Communications Sec Litig.*, 618 F.Supp 735, 745 (S.D.N.Y. 1985) *aff'd* 798 F.2d 35 (2d Cir. 1986).

*Experience and Views of Counsel*

Class counsel submit a declaration to support this motion for final approval of class action settlement. Class counsel are experienced attorneys, and they believe the instant settlement is in the best interests of the class members for a number of reasons, including the risks of continuing the litigation. This factor supports approval of the settlement agreement.

*Reaction to the Class of the Proposed Settlement*

The reaction of the Class to the Settlement weighs in favor of approval. The absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members. *See Nat'l Rural Telecomms*. v. DIRECTV, Inc., 221 F.R.D. 523, 529 (C.D. Cal. 2004). There were no objections to the Settlement, and less than 1% of the Class opted out of the Settlement. The Class Representatives also support and approve of the Settlement.

Approximately 47% of the total Class Members participated in the Settlement. Tbe class members in this case are transitory, evidenced by fact that 225 of the class members were no longer domiciled at their last known address. A transitory class can affect the response rate and make providing notice difficult. *Tarlecki v. bebe Stores, Inc.*, No. C 05-1777 MHP, 2009 WL 3720872 at *2 (N.D. Cal. Nov. 3, 2009) (finally approving settlement with 18% response rate). The longer the delay in resolving the claims on behalf of the Class, the greater the chance that a class member would not receive notice, not be able to make a claim, and not receive any compensation under the Settlement.

*Absence of any Collusion between Negotiating Parties*


In addition to the participation of an impartial mediator, Mr. Mark S. Rudy, Esq., the scope and extent of the motions filed by both sides of this matter are evidence of an informed, arm's length negotiation between the parties and the absence of any collusion.

An initial day-long mediation session between the parties took place on July 22, 2011. Although the mediation was unsuccessful, the parties continued to engage in phone negotiations through Mr. Rudy over an extended period of time, while simultaneously preparing and filing motions for certification and partial summary judgment. In late September 2011, Class Counsel again engaged in settlement discussions through phone and email communications with Mr. Rudy, again whilst simultaneously preparing and opposing motions and conducting additional discovery. Settlement discussions continued on a regular basis through the end of October 2011. Another round of settlement discussions through Mr. Rudy occurred again in late November 2011 through early December 2011, although such discussions did not yield a resolution of the matter.

Settlement discussions through Mr. Rudy began again in February 2012 and continued through March 2012. Mr. Rudy made a mediator's proposal on or about March 21, 2012, which was accepted by both sides and was the genesis of the Settlement offered here for final approval. The Court finds that the foregoing supports the conclusion that the Settlement was the product of arms-length negotiations, and is free of collusion.

*The Proposed Payment to the Claims Administrator*

The Court finds that the $30,000 amount requested for payment to the Claims Administrator is fair, reasonable and consistent with other claims administration fees in similar class action settlements, particularly in light of the number of Class Notices that the Claims Administrator was required to process.

*The Proposed PAGA Allocation is Reasonable and Should be Approved*

Pursuant to the Settlement Agreement, GTI agrees to allocate $10,000 to Plaintiffs' PAGA claims, and will pay $7,500 to the LWDA, and $2,500 to participating Class Members on a pro-rata basis. This comports with settlement approval of PAGA awards in other cases. *See, e.g., Chu*

*v. Wells Fargo Investments, LLC,* No. C 05-4526 MHP, C 06-7924 MHP, 2011 WL 672645 at *1 (N.D. Cal. Feb. 16, 2011) (approving PAGA settlement payment of $7,500 to the LWDA out of $6.9 million common-fund settlement). Therefore, the Court will approve the allocation of the Settlement to Plaintiffs' PAGA claim.

*Attorneys' Fees*

In class actions, the district court has broad discretion in assessing the reasonableness of attorneys' fees. *In re FPI/Agretech Securities Liti.,* 105 F.3d 469, 472 (9th Cir.1997). This discretion permits the court to award fees based on either the lodestar calculation or common fund method. *Id.; In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig .,* 105 F.3d 602, 607 (9th Cir.1997). In using either method of attorneys' fees calculation, "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Id* .

Class counsel request attorneys' fees in an amount of $1,221,000, or 33% of the Gross Settlement Amount.  Plaintiffs also request costs and expenses in the amount of $99,273.92.  The parties ask this Court to apply the common fund method to award the attorneys fees rather than the lodestar method. As set forth above, this Court has discretion to apply either the lodestar method or common fund method. The "choice between lodestar and percentage calculation depends on the circumstances[.]" *Six Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir.1990).  Either "method may ... have its place in determining what would be reasonable compensation for creating a common fund." *Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268, 272 (9th Cir.1989). Although 25% is the benchmark in common fund calculations, the "benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six Mexican Workers,* 904 F.2d at 1311.  The amount of attorneys fees sought equals 33% of the settlement fund.  The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark. *Powers v. Eichen,* 229 F.3d 1249, 1256

(9th Cir. 2000).

Courts frequently cross-check a percentage fee request with the lodestar analysis. *See*, *e.g., Sutter Health Uninsured Pricing Cases*, 171 Cal.App.4th 495, 512 (Cal. App. 2009). In conducting a lodestar cross-check, the court must first determine the dollar value of the proposed percentage-based fee award. *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201 at *14 (N.D. Cal. Nov. 26, 2007). Here the dollar value of the requested award is $1,221,000.

The next step is to cross-check the proposed percentage fee against the lodestar. *Id.* Three figures are salient in a lodestar calculation: (1) counsel's reasonable hours; (2) counsel's reasonably hourly rate and (3) a multiplier thought to compensate for various factors (including unusual skill or experience of counsel, or the ex ante risk of nonrecovery in the litigation). *In re HPL Tech., Inc. Sec. Litig.*, 366 F.Supp.2d 912, 919 (N.D. Cal. 2005).

Class counsel has submitted detailed documentation of the hours worked in this action. The attorneys and staff of the Sutton Hatmaker expended a total of 2,384.73 hours on this matter. The attorneys and staff of Patterson Law Group expended a total of 685.5 hours on this matter. The Court finds that the total number of hours expended on this case is reasonable in light of several factors, including: (1) the extensive amount of law and motion practice that was expended on this case, including filing a Motion for Partial Summary Judgment, opposing a Motion to Dismiss, and filing a Motion for Class Certification, and the complexity of the legal issues accompanying such motions; (2) the advanced stage of discovery in this matter, which included the taking of 16 depositions (many of which required extensive out-of-state travel), both propounding and responding to several sets of written discovery requests and meeting and conferring thereon; (3) the complicated nature of reconstructing and analyzing GTI's data and records pertaining to the hours worked of class members; and (4) the extensive efforts expended to locate and interview class members to support Plaintiffs' claims.

Class counsel has also submitted documentation of the hourly rates billed in this matter. Attorneys at Sutton Hatmaker, located in Fresno, California, billed at rates ranging from $125 to

$400 per hour.  Attorneys at the Patterson Law Group, located in San Diego, California, billed at rates of $650 per hour.  Prevailing hourly rates in the Eastern District of California are in the $400/hour range.  *Bond v. Ferguson Enterprises, Inc.*, No. 1:09-cv-1662 OWW MJS, 2011 WL 2648879 at *11-13 (E.D. Cal. June 30, 2011).  Plaintiffs contend the higher hourly rate for the attorneys from the Patterson Law Group is reasonable because they fall within the range set forth for attorneys of their respective experience and qualifications in the Laffey Matrix, a widely recognized compilation of attorney and paralegal rate data frequently used in fee awards cases.  Plaintiffs further note that they originally filed the lawsuit against GTI on behalf of Plaintiffs Christopher and Emma Yanez in San Diego, California.  That case was consolidated with the case filed by Plaintiff Garcia in the Eastern District.

The resulting lodestar amount based on the reasonable number of hours expended and the reasonable rates of class counsel is $951,000.  Comparing the lodestar against the requested fee amount of $1,221,000 would result in a multiplier of 1.28.  To determine whether the lodestar multiplier is reasonable the following factors may be considered: (1) the amount involved and the results obtained, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Fischel v. Equitable Life Assur. Society of U.S.,* 307 F.3d 997, 1008 (9th Cir.2002) (citing *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 6 (9th Cir.1975)).

First, Class Counsel achieved a good result and generated a significant benefit for the class amounting to the Net Settlement Amount of approximately $2,309,726  for the benefit of a class of approximately 1,869 members. Based on the claims rate, the 871 class members who submitted valid and timely claims will receive $1,416,662.88 in the aggregate, with an average award of $1,626,47 each, or 65% of the maximum potential value of the payout to class

members.

Second, Plaintiff's meal break claims presented arguable questions for Class Counsel due to the California Supreme Court's recent decision in *Brinker*, which was pending at the time this case was settled. There was also a risk that even if Plaintiffs were able to certify a claim for illegal wage statements, they would have difficulty establishing that class members suffered the requisite injury. Plaintiffs also faced uncertainty over whether they would be required to comply with Federal Rule of Procedure 23 as to their claims under PAGA.

Third, this case required substantial skill in litigating complex legal issues, particularly in light of the uncertainty in California law as it related to Plaintiffs' meal break claims. As discussed above, Plaintiffs were required to contest and brief complicated questions such as whether Plaintiffs would be required to certify their PAGA claims according to Rule 23 requirements. GTI's per mile piece-rate payment system also presented counsel with logistical challenges in reconstructing an accurate record of time worked by class members, and required expert analysis.

Fourth, Class Counsel undertook considerable financial risks in this litigation by accepting this case on a contingency basis. There was no guarantee they would recoup their fees or the substantial costs advanced. The contingent nature of the representation has also resulted in Class Counsel litigating this matter for over two-and-a-half years without any compensation. As a consequence, Class Counsel was unable to take on cases they would have otherwise taken.

Lastly, the percentage award requested in this case is commensurate with the percentage-of-the-benefit awards made in other wage and hour actions in this District. *See, e.g.*, *Benitez et al. v. Wilbur*, 1:08-CV-1122 LJO GSA (E.D. Cal. Dec. 15, 2009) (33.3%); *Chavez et al. v. Petrissans et al.*, 1:08-CV-00122 LJO-GSA (E.D. Cal. Dec. 15, 2009) (33.3%); *Schiller v. David's Bridal, Inc.*, 1:10-cv-00616-AWI-SKO (E.D. Cal. June 28, 2012) (32.1%); *Vasquez v. Aartman*, 1:02-CV05624 AWI LJO (E.D. Cal. Sep. 19, 2005) (30%); *Baganha v. California Milk Trans.*, 1:01-CV-05729 AWI LJO (E.D. Cal. July 23, 2009) (31.25%); *Randall Willis et al. v. Cal Western Transport, and Earl Baron et al. v. Cal Western Transport*, Coordinated Case No.

1:00-cv-05695 AWI LJO (E.D. Cal. Aug. 20, 2003) (33%).

Based on the overall success, the skill with which the case was prosecuted, the substantial legal risks associated with Plaintiffs' claims, and the financial risks borne by Class Counsel, Plaintiff's request for a multiplier of 1.28 of its lodestar is reasonable. *See, e.g. Steiner v. Am. Broadcasting Co., Inc.,* 248 Fed. Appx. 780, 783 (9th Cir.2007) (approving multiplier of 6.85 and citing cases with comparable or higher multipliers); *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1051 (finding no abuse of discretion in awarding a multiplier of 3.65). Based on the absence of opposition, and Class Counsel's well-documented hours worked in this action, this Court approves the attorneys' fees in the total amount of $1,221,000.

*Costs*

The Court further finds that Plaintiffs' request for costs is reasonable. The declarations of Class Counsel detail the costs incurred, which include travel costs, mediation fees, expert fees, copy and scanning costs, filing fees, and electronic research fees. These types of fees are routinely reimbursed. *See*, *e.g., Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 493 (E.D. Cal. 2010). Here, the actual costs incurred are less than the estimated $100,000, which was included in the Class Notice and to which no class member objected. Plaintiffs' request of costs in the amount of $99,273.92 is reasonable.

*Class Representative Enhancement*

Pursuant to the Settlement, Plaintiffs seek an enhancement in the amount of $15,000 to the each named Plaintiff. This payment is intended to recognize the time and efforts that the named Plaintiffs spent on behalf of the Class Members.

"Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *Ingram v. The Coca–Cola Company,* 200 F.R.D. 685, 694 (N.D.Ga.2001) (internal quotations and citations omitted). In *Coca–Cola,* the Court approved service awards of $300,000 to each named plaintiff in recognition of the services they provided to the class by responding to discovery, participating in the mediation process, and taking the risk of stepping forward on

behalf of the class. *Id.,* 200 F.R.D. at 694; *see also, Van Vranken v. Atl. Richfield Co.,* 901 F.Supp. 294, 299 (N.D.Cal.1995) (approving $50,000 participation award to plaintiffs); *Glass v. UBS Financial Services, Inc.,* 2007 WL 221862, at *17 (N.D.Cal. Jan.26, 2007) (approving $25,000 enhancement to each named plaintiff).

In this case, among other things, the named Plaintiffs: (1) assisted Class Counsel in investigating and substantiating the claims alleged in this action, including directing Class Counsel to other employees of GTI who could substantiate their claims; (2) assisted in the preparation of the Complaint in this action; (3) produced evidentiary documents to Counsel; (4) appeared for a full day of deposition testimony; (5) responded to numerous written discovery requests; and (6) assisted in the settlement of this litigation. The Court therefore finds that the incentive awards in the amount of $15,000 requested in this case are reasonable.

## CONCLUSION AND ORDER

Accordingly, IT IS HEREBY ORDERED that:

1. The Settlement Class is CERTIFIED for the purposes of settlement, and Plaintiffs Simon V. Garcia, Roy Van Kempen, Christopher Yanez, and Emma Yanez are APPOINTED as Class Representatives;

2. The parties' proposed Joint Stipulation of Settlement ("Settlement Agreement") is APPROVED;

3. The Gross Settlement Amount of $3,700,000 is fair and reasonable;

4. The payment of $1,221,000.00 in attorneys' fees (33% of the Gross Settlement Amount) and $99,273.92 in costs and expenses is APPROVED;

5. The enhancement payment of $15,000.00 to each of the named Plaintiffs, Simon V. Garcia, Roy Van Kempen, Christopher Yanez, and Emma Yanez, is APPROVED;

6. The payment of $7,500.00 to the Labor Workforce and Development Agency, and $2,500.00 to participating Class Members on a pro-rata basis, in satisfaction of

Plaintiffs' PAGA claims, is APPROVED;

7. The payment of $30,000.00 to the Settlement Administrator, Rust Consulting, Inc., is APPROVED;

8. Under the terms of the Settlement Agreement, within fourteen (14) days after the Effective Date of Settlement, GTI shall deposit with the Settlement Administrator funds as directed by Section V, Part 2 of the Settlement Agreement;

9. The Court retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation, and enforcement of this Order and Settlement;

10. Nothing in this Order shall preclude any action to enforce the parties' obligations under the Settlement or under this Order;

11. The Clerk of the Court is directed to enter judgment in this action.

IT IS SO ORDERED.

Dated:   October 29, 2012                                     _____
                                                                             CHIEF UNITED STATES DISTRICT JUDGE